13-1916-cv
*Kristan L. Peters v. Committee on Grievances*

# In the
# United States Court of Appeals
# For the Second Circuit

_____

AUGUST TERM 2013
No. 13-1916-cv

KRISTAN L. PETERS,
*Appellant*,

v.

COMMITTEE ON GRIEVANCES FOR THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK,
*Appellee.*

_____

Appeal from the United States District Court
for the Southern District of New York.
M-2-238 (CM) — Colleen McMahon, *Judge*, for the Committee on Grievances.

_____

ARGUED: FEBRUARY 19, 2014
DECIDED: APRIL 4, 2014

_____

Before: CABRANES, SACK and WESLEY, *Circuit Judges*.

_____

Kristan Peters, an attorney admitted to the bars of New York and Connecticut, appeals from the April 10, 2013 Order of the Committee on Grievances for the United States District Court for the

Southern District of New York (the "Committee") suspending her from practicing law in the Southern District of New York for seven years, based on a conclusion that she violated various provisions of the New York Code of Professional Responsibility ("Professional Code"), 22 NYCRR §§ 1200.1 *et seq.*, while a partner at the law firm of Dorsey & Whitney. Peters challenges both the finding that she violated the Professional Code, and the reasonableness of the seven-year suspension.

Upon review of the record, we find no error in the Committee's conclusion that Peters violated the Professional Code. We hold further that the Committee acted well within its informed discretion in ordering a seven-year suspension, notwithstanding the lack of directly analogous precedent, based on its conclusion that Peters's conduct was *sui generis*.

Accordingly, we **AFFIRM** the judgment of the Committee suspending Peters from practice in the Southern District of New York for a period of seven years.

_____

>ELKAN ABRAMOWITZ (Catherine M. Foti, Daniel F. Wachtell, *on the brief*), Morvillo Abramowitz Grand Iason & Anello, P.C., New York, NY, *for Appellant Kristan L. Peters*,
>
>QIAN A. GAO (David B. Tulchin, Esterina Giuliani, *on the brief*), New York, NY, *for Appellee Committee on Grievances*.

_____

PER CURIAM:

Kristan Peters, an attorney admitted to the bars of New York and Connecticut, appeals from the April 10, 2013 Order of the Committee on Grievances for the United States District Court for the Southern District of New York (the "Committee")[1] suspending her from practice in the Southern District of New York ("SDNY") for seven years, based on a conclusion that she violated various provisions of the New York Code of Professional Responsibility ("Professional Code"), 22 NYCRR §§ 1200.1 *et seq.*, while a partner at the law firm of Dorsey & Whitney. Peters challenges both the finding that she violated the Professional Code, and the reasonableness of the seven-year suspension.

This case comes to us on appeal for the second time, after we vacated the Committee's first order suspending Peters for a term of seven years, and remanded with instructions to, *inter alia,* conduct an independent evidentiary hearing on the charges. On review of the new record, we find no error in the Committee's conclusion that Peters violated the Professional Code. We hold further that the Committee acted well within its informed discretion in ordering a seven-year suspension, notwithstanding the lack of directly

---

[1] At the time of the April 10, 2013 Order, the Committee members were District Judge P. Kevin Castel (Chairman), Chief Judge Loretta A. Preska, District Judges Vincent L. Briccetti, Katherine B. Forrest, Paul A. Gardephe, John F. Keenan, Colleen McMahon, Louis L. Stanton, Richard J. Sullivan, and Magistrate Judge Frank Maas. Judge McMahon served as Chairman Pro Tempore on this matter, and Judge Briccetti took no part in its consideration.

analogous precedent, based on its conclusion that Peters's conduct was *sui generis*.

Accordingly, we **AFFIRM** the judgment of the Committee suspending Peters from practice in the Southern District of New York for a period of seven years.

## BACKGROUND

### A. Charges Against Peters

The facts underlying the challenged suspension have been repeated in several opinions, over hundreds of pages, and need not be re-stated here.[2] Briefly, the charges against Peters arose out of her conduct as a partner at the law firm of Dorsey & Whitney, in the course of litigation in SDNY before Judge Harold Baer, Jr. (the "*Wolters-Kluwer* litigation").

Peters was charged principally with (1) instructing a first-year associate, Jordan Brackett, to "mark up" deposition transcripts on the theory that the markings would bring the transcripts under the protection of the attorney work-product privilege, thereby exempting them from Judge Baer's order that all discovery be returned to the District Court, and attempting to mislead the Court as to those events (the "Brackett Allegation," or "Charge One"); and (2) "cop[ying] transcripts and order[ing] additional . . . transcripts in intentional disregard of court orders," and "us[ing] the transcripts in a[ ] [related] action in Massachusetts," in knowing violation of a

---

[2] For detailed background, *see, e.g.*, January 23, 2013 Report and Recommendation, Special Appendix ("SPA") 26-143; *In re Peters*, 543 F. Supp. 2d 326, 331–34 (S.D.N.Y. 2008) (interim suspension order).

confidentiality order (the "Confidentiality Order") entered by Judge Baer (the "Confidentiality Order Allegation," or "Charge Three").[3] *See* January 30, 2008 Order to Show Cause, Special Appendix ("SPA") 1-2.

### B. Procedural History

We outline the extensive procedural history of this case only insofar as it is relevant to Peters's claims on appeal.

In 2007, after conducting a sanctions hearing regarding Peters's conduct during the *Wolters-Kluwer* litigation, Judge Baer imposed non-monetary sanctions on Peters for violating the Professional Code, and referred the case to the Committee for further disciplinary proceedings.

In 2009, the Committee issued a final ruling[4] that Peters had violated at least three disciplinary rules in connection with the charges (outlined above) against her: (1) Disciplinary Rule ("DR") 1-102(A)(5), prohibiting a lawyer from engaging in "conduct that is prejudicial to the administration of justice"; (2) DR 1-102(A)(4),

---

[3] The allegations that formed the basis for the original "Charge Two" against Peters were not at issue on remand.

[4] The Committee first ordered Peters to show cause why she should not be disciplined. On review of Peters's submissions and the record before Judge Baer, the Committee concluded that "Judge Baer's findings are strongly supported by the record," and suspended Peters temporarily from practicing in SDNY, but deferred final adjudication pending resolution of the appeal from Judge Baer's sanctions order. *In re Peters*, 543 F. Supp. 2d 326, 329-35 (S.D.N.Y. 2008). In an April 21, 2009 Order and Opinion, this Court affirmed Judge Baer's sanctions order against Peters, but vacated the sanctions against Dorsey & Whitney and a junior partner, Marc Reiner. *See Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 119 (2d Cir. 2009). The Committee then proceeded with its final adjudication of the charges against Peters.

prohibiting a lawyer from engaging in "conduct involving dishonesty, fraud, deceit, or misrepresentation"; and (3) DR 7-106(A), prohibiting a lawyer from "disregard[ing] or advis[ing] [a] client to disregard . . . a ruling . . . made in the course of a proceeding."[5] 22 N.Y.C.R.R. §§ 1200.33, 1200.37. As a penalty, the Committee initially ordered disbarment, but, on reconsideration, imposed a seven-year suspension.

On appeal from the Committee's 2009 decision suspending Peters for seven years, we applied a "more exacting [standard] than . . . the ordinary abuse-of-discretion standard," in light of the fact that the Committee had based its conclusions on the findings of Judge Baer, who had, in the nature of things, acted as "accuser, fact finder and sentencing judge all in one." *In re Peters*, 642 F.3d 381, 384 & n.4 (2d Cir. 2011) (internal quotation marks omitted).

Applying that standard, we vacated the findings regarding the Brackett Allegation on the basis that Peters was entitled to, and had not received, an independent evidentiary hearing. *Id.* at 390. We also vacated the charge based on the Confidentiality Order Allegation, holding that although Peters violated the Confidentiality Order, the Committee had made insufficient findings as to whether Peters had the requisite culpable state of mind. In vacating that charge, we emphasized that the Committee was "free [on remand] to make a new determination, based on detailed factual findings, of

---

[5] Effective April 1, 2009, the New York Rules of Professional Conduct replaced the New York Code of Professional Responsibility. Former DR 1-102(A)(5) is now RPC 8.4(d); former DR 1-102(A)(4) is now RPC 8.4(c); and former DR 7-106(A) is now RPC 3.4(c). The rules are substantively unchanged. *See* SPA 83-85.

whether Peters acted with a culpable state of mind . . . and, if so, to discipline her accordingly."[6] *Id.* at 397-98.

On remand, Judge Colleen McMahon, acting as Chairman Pro Tempore of the Committee, ultimately referred the matter to Magistrate Judge Lisa M. Smith, who took submissions and heard eleven full days of testimony.[7] Judge Smith then issued a 118-page Report and Recommendation ("R&R") concluding that Peters's conduct during the *Wolters-Kluwer* litigation violated the Professional Code, and recommending a five-year suspension.[8]

---

[6] We expressly did "not . . . suggest that [either of] the charges against Peters were improperly brought," and left open the possibility that the Committee might again impose a suspension *or* disbar Peters as long as it explained the rationale for the sanction imposed. *Peters*, 642 F.3d at 398.

[7] During the hearing, the Committee was represented by the same counsel as on appeal. Peters had different counsel before the Committee.

[8] On this second appeal, Peters claims that the charges against her were inappropriately expanded on remand. *See* Appellant's Br. 51. This claim is without merit, for substantially the reasons stated in the R&R, *see* SPA 31 n.4, 137-38, and the April 10, 2013 Order, *see* SPA 152. In short, the charges that formed the basis for the Committee's suspension were within the scope of the original charges against Peters, which were not narrowed on remand. *See* Note 5, *ante*. Moreover, Peters had ample notice of the charges against her, and on which she was sanctioned. Finally, to the extent that the Committee viewed the evidence against Peters *more* harshly after the independent hearing before Judge Smith, that was a risk Peters assumed in seeking further process, and there is no evidence that the Committee's second decision was a result of vindictiveness. *See North Carolina v. Pearce*, 395 U.S. 711, 720, (1969) ("[A] corollary of the power to retry a defendant is the power, upon the defendant's reconviction, to impose whatever sentence may be legally authorized, whether or not it is greater than the sentence imposed after the first conviction," as long as the higher sentence is not a result of "vindictiveness against a defendant for having successfully attacked his first conviction . . . ."), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). Notably, the Committee's final decision here did not impose a harsher "sentence" than that imposed originally.

In an April 10, 2013 Order, the Committee adopted the finding that Peters had violated the Professional Code, but concluded that "this case is *sui generis*—and deserving of [a seven-year suspension]." SPA 155. Peters moved for reconsideration, and relief from judgment, both of which the Committee denied.

It is against this backdrop that we review Peters's appeal.

## DISCUSSION

On appeal, Peters claims principally that: (1) she was denied a full and fair disciplinary hearing in the proceedings before Judge Smith and the Committee, resulting in the erroneous conclusion that she violated the relevant disciplinary rules; and (2) the Committee "abused its discretion" in imposing a seven-year suspension, which was outside the range of discipline imposed in comparable cases, and improperly considered aggravating factors of which Peters lacked notice. We address the "liability" claim and the "sentencing" claim in turn.

### A. The Conclusion that Peters Violated the Professional Code

In general, we review "[t]he decision whether to impose disciplinary sanctions on an attorney [under] an abuse-of-discretion standard."[9] *Grievance Comm. for S. Dist. of N.Y. v. Simels*, 48 F.3d 640,

---

[9] One exception to this deferential standard is where a party appeals "the Committee's interpretation of a particular disciplinary rule," in which case our review is "plenary," or *de novo*. *Simels*, 48 F.3d at 645. Another is where we are reviewing a decision in which the judge is necessarily the "accuser, fact finder and sentencing judge," as was the case in Peters's first appeal. *Peters*, 642 F.3d at 384 & n.4. Neither of these exceptions applies here.

645 (2d Cir. 1995); *Peters*, 642 F.3d at 384. A court "abuse[s] its discretion" when it "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (citations and internal quotation marks omitted).

### 1. The Brackett Allegation (Charge One)

The challenges Peters raises with regard to the finding of guilt on the Brackett Allegation relate almost exclusively to Judge Smith's credibility determinations and the assessment of conflicting evidence. As set forth above, Judge Smith conducted an extensive evidentiary hearing, approximately five-and-one-half days of which were devoted to Peters's testimony. Judge Smith also considered testimony from Brackett, and numerous other lawyers and staff members from Dorsey & Whitney, in reaching her conclusions.

The Committee then reviewed the R&R's "extensive, record-based findings," along with Peters's specific objections. SPA 146-47. During the review process, transcripts of the hearing and the parties' exhibits were also available to the Committee. In adopting the R&R, the Committee properly accorded substantial deference to Judge Smith's credibility determinations, *Anderson v. City of Bessemer City*, 470 U.S. 564, 574-75 (1985), and found them to be "supported by substantial evidence." SPA 148. The Committee also independently concluded that Peters lacked credibility. *See* SPA 149 (noting that Peters's "effort to minimize her role in the lawsuit and the unfolding

events seriously wounded her credibility in the eyes of Judge Smith and of the Committee").

Our review of the record reveals no error, much less clear error, in Judge Smith's findings, which the Committee adopted after its own review of the record. Accordingly, we conclude that Peters's arguments with respect to the Brackett Allegation are without merit.

### 2. The Confidentiality Order Allegation (Charge Three)

The only open question regarding the Confidentiality Order Allegation is whether Peters acted with the requisite "culpable state of mind," defined as "venal intent." *Peters*, 642 F.3d at 394-95. That portentous term, at least in the context of the Professional Code, merely means "scienter, deceit, intent to mislead, or knowing failure to correct misrepresentations." *Matter of Altomerianos*, 160 A.D.2d 96, 101 (1st Dep't 1990) (internal quotation marks omitted); *see also id.* (invoking term "venal intent" for the first time and noting: "That venal intent is a necessary element to DR 1–102(A)(4) we think is compelled by the definition of fraud given in the . . . Code as 'not includ[ing] conduct . . . which lacks an element of scienter, deceit, intent to mislead, [etc.] . . . .'").

As evidence of Peters's culpable state of mind, the Committee cited, among other things, "e-mails that demonstrated her familiarity with the terms of the Confidentiality Order," and evidence that other partners told Peters that the Confidentiality Order did not permit her to use materials in a related litigation in

Massachusetts.[10] SPA 149. The Committee found Peters's "deliberate[] [choice] to obtain additional copies of the transcripts after being ordered to surrender them . . . by lying to the court reporter," and her "far-fetched and wholly implausible explanation for her conduct," was "strong evidence of her culpable state of mind." SPA 151.

The Committee's findings are sufficient to establish the requisite culpable intent, and nothing in our review of the record suggests that they were clearly erroneous or that the Committee "abused its discretion" in sustaining Charge Three.

**B. The Seven-Year Suspension**

Our review of the sanction imposed in a disciplinary proceeding is analogous to our review of a sentence imposed in an ordinary criminal action. Where, as here, there has been "a very great deal of process," SPA 162, and no procedural error, our "abuse-of-discretion" review is akin to a review for "substantive unreasonableness." *United States v. Rigas*, 583 F.3d 108, 114, 121-22 (2d Cir. 2009). As we have explained, such review "provide[s] a backstop for those few cases that, although procedurally correct, would nonetheless damage the administration of justice because the sentence imposed was shockingly high," results in "manifest

---

[10] In remanding, we noted that if the Committee found Peters to be merely negligent in disobeying the Order, it "might not warrant severe, or any, disciplinary measures," whereas if the Committee found that Peters's "failure to familiarize herself with the [O]rder was in bad faith," such a finding might warrant discipline. *Peters*, 642 F.3d at 396.

injustice," or is "otherwise unsupportable as a matter of law." *Id.* at 123.

In determining the appropriate sanction, Judge Smith considered mitigating and aggravating factors, the prejudice caused by Peters's actions, and the relevant authorities, as directed by this Court. *See Peters*, 642 F.3d at 398. Judge Smith recognized Peters's clean disciplinary record and favorable character testimony, but noted her apparent, and continuing, lack of remorse. She also considered: (1) Peters's refusal to acknowledge the wrongful nature of her conduct; (2) the "pattern of providing testimony that placed blame for any and all wrongdoing on all of the other attorneys," SPA 127; (3) "instances in which Peters was untruthful" at the hearing, SPA 132; (4) the fact that Peters came "dangerously close to engaging in bad faith obstruction of the disciplinary proceeding," SPA 137; and (5) Peters's substantial legal experience, SPA 139.[11] Notwithstanding the "seriousness of [the] misconduct," Judge Smith recommended a five-year suspension due to her inability to find an analogous case resulting in a longer suspension. SPA 141.

The Committee took Judge Smith's recommendation "quite seriously," SPA 154, but concluded that a seven-year suspension was warranted under the circumstances. SPA 155. The Committee found Peters's "most serious failing"—which it deemed "particularly heinous"—to be her "corruption of a young and

---

[11] Peters's argument that she lacked notice of the aggravating factors that Judge Smith would consider is without merit. As the Committee noted, Judge Smith made clear that she would consider the factors set forth in the ABA Center for Professional Responsibility Standards, and did just that. *See* SPA 158.

inexperienced lawyer, over whom she had power and authority." SPA 154. Additional aggravating factors noted by the Committee were Peters's attempts to "salvage her reputation at the expense of . . . Mr. Brackett"; her "habit of twisting the truth"; her "flagrant mischaracterization of the record"; and the fact that, in the Committee's view, Peters had "yet to accept any responsibility for . . . serious professional wrongdoing." SPA 154-55. Accordingly, the Committee concluded that the case was *sui generis* and deserving of a longer punishment.

Our direction that the Committee should consider relevant precedent was intended to inform, not confine, the Committee's exercise of its discretion in determining the appropriate sanction for a violation of the Professional Code. Every such violation is, in some sense, *sui generis*; that is, it requires a fact-particular inquiry and is not amenable to a rigid calculus based on other cases. It is for that reason that we have a Committee on Grievances that may draw upon the cumulative authority of a panel of experienced judges. In view of the Committee's conclusions regarding the nature of Peters's conduct, we cannot say that its imposition of a seven-year suspension was "substantively unreasonable," shocking to the judicial conscience, or otherwise unsupportable.

## CONCLUSION

To summarize:

(1)   The Committee did not make clearly erroneous factual findings regarding the Brackett Allegation (Charge One), and properly sustained that charge against Peters.

(2)   The Committee made sufficient findings to support the conclusion that Peters acted with "venal intent," as that term is understood in the law of professional responsibility, in disobeying the Confidentiality Order (Charge Three), and properly sustained that charge against Peters.

(3)   Upon consideration of aggravating and mitigating factors and relevant precedent, the Committee reasonably exercised its informed discretion by imposing a seven-year suspension, notwithstanding the absence of directly analogous case law imposing a comparable sanction.

For the reasons set forth above, we **AFFIRM** the judgment of the Committee suspending Peters from practice in the Southern District of New York for a period of seven years.[12]

---

[12] The seven-year suspension dates from April 10, 2008, the date on which Peters was suspended *pendente lite*.